## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| GREGORY GARVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-062 |
| | ) | |
| TRANSAM TRUCKING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court are Plaintiff Gregory Garvin's Motion to Strike Defendant's Notice of Non-Party Fault, doc. 49, and Defendant TransAm Trucking, Inc.'s ("TransAm") Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint, doc. 55. Both motions are ripe for disposition. *See generally* docket.

### I.     BACKGROUND

Garvin filed this lawsuit invoking the Court's diversity jurisdiction and alleging injuries from a vehicle collision involving Garvin and Marlon Kelly, a truck driver for TransAm. *See* doc. 1 (Complaint); doc. 8 (Amended Complaint). Filed on March 21, 2022, Garvin's Amended Complaint named TransAm, Kelley, and RLI Insurance Company as

1

defendants; Kelly and RLI Insurance Company were later voluntarily dismissed. *See* doc. 8; *see also* doc. 18 (dismissing RLI Insurance Company without prejudice); doc. 36 (dismissing Kelley without prejudice).

Garvin alleges he "suffered a severe and permanent spine injury requiring two surgeries" after Kelley backed a tractor-trailer into his parked vehicle. *See* doc. 8 at 3; *see also* doc. 42 at 1 ("Defendant acknowledges that its driver negligently backed into the Plaintiff's parked tractor at a loading dock facility."). TransAm answered and raised as an affirmative defense that "[any] injuries, losses, or damages alleged by Plaintiff were proximately caused or contributed to by a superseding and intervening cause" and also asserted "contributory/comparative negligence" "[t]o the extent as may be shown applicable by the evidence through discovery." Doc. 13 at 2-3 (Answer to Amended Complaint).

The original scheduling order gave the parties until June 10, 2022, to amend their pleadings. *See* doc. 21 at 1. That deadline was never altered, but discovery was otherwise extended several times between May 2022 and August 2023. *See* doc. 26 (Amended Scheduling Order);

doc. 34 (Amended Scheduling Order); doc. 38 (Amended Scheduling Order).   Ultimately, TransAm's deadline to furnish its expert witness reports was February 3, 2023.   *See* doc. 34 at 1.   On February 3, 2023, TransAm disclosed an expert witness report from Dr. Kevin Stevenson, dated January 22, 2023, wherein Stevenson opined that Garvin's doctor should never had proceeded with a laminectomy due to preexisting conditions in Garvin's spine that rendered the surgery unnecessary and inappropriate.   *See* doc. 55-3 at 2-4.   Stevenson was eventually deposed on June 20, 2023.   Doc. 55-4 at 1.   During his deposition, Stevenson opined–for the first time–that proceeding with the laminectomy constituted medical malpractice.   *Id.* at 4-5.   The parties did not depose Garvin's doctor, Dr. Karl Lozanne, until August 31, 2023.   *See* doc. 55-1 at 9.   Discovery closed on November 6, 2023.   Doc. 38 at 1.

On November 16, 2023, TransAm filed a Notice of Non-Party Fault pursuant to O.C.G.A. § 51-12-33(d), notifying Garvin that it intended to show that Lozanne was "either wholly or partially at fault for any damages Plaintiff may have suffered."   Doc. 42 at 1.   TransAm contends that "the finder of fact should consider the fault of Dr. Lozanne for improperly choosing to proceed forward with the laminectomy surgery as

part of the causation analysis in this case." *Id.* at 2.  TransAm relies on O.C.G.A. § 51-12-33(c), which provides that "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit," to support its position the jury should consider Lozanne's alleged medical malpractice in determining causation.  Doc. 42 at 2.

On January 12, 2024,[1] Garvin moved to strike TransAm's Notice of Non-Party Fault.  Doc. 49.  He argues that the Notice is inappropriate because TransAm did not raise apportionment of non-party fault pursuant to O.C.G.A. § 51-12-33 as an affirmative defense in its Answer. *See id.* at 3-4.  He also argues that apportionment is not permissible in this case because it is a single defendant case brought before O.C.G.A. § 51-12-33 was amended to allow apportionment of damages in single defendant cases. *See id.* at 4-8.

Not only did TransAm respond to Garvin's Motion to Strike, *see* doc. 61, but on January 12th—and seemingly in response to Garvin's argument

---

[1] January 12, 2024, was the deadline for filing all civil motions, excluding motions in limine. *See* doc. 48 at 2.

that apportionment of non-party fault was not properly raised as an affirmative defense–TransAm moved for leave to amend its Answer to include the non-party fault of Lozanne as an affirmative defense. *See* doc. 55; *see also* doc. 55-5 at 2, 4 (Proposed Amended Answer). TransAm argues that good cause exists to allow the out-of-time amendment because the basis for the amendment could not have been discovered until after the deadline to amend pleadings ran. *See* doc. 55-1 at 8-9. It also argues that it has met the liberal standard governing amendment under Rule 15 of the Federal Rules of Civil Procedure. *Id.* at 9-13. Garvin opposes, in part because TransAm did not move to amend sooner and in part because, as argued in his Motion to Strike TransAm's Notice of Non-Party Fault, doc. 49, amendment would be futile if apportionment of damages is impermissible in this case. *See* doc. 64.

Garvin's motion to strike, doc. 49, and TransAm's motion for leave to amend, doc. 55, are intertwined. The Court will resolve Garvin's

motion to strike before turning to TransAm's motion for leave to amend, but the analysis of each motion will reference the analysis for the other.

## II.   MOTION TO STRIKE

"[M]otions to strike are disfavored and infrequently granted." *Purdee v. Pilot Travel Centers, LLC*, 2009 WL 423976, at *1 (S.D. Ga. Feb. 19, 2009).[2]   Garvin moves to strike TransAm's Notice of Non-Party Fault for two reasons: (1) TransAm did not raise non-party fault as an affirmative defense in its answer; and (2) apportionment of damages is not permissible in this case.  *See* doc. 49 at 3-8.  The Court addresses each of these arguments in turn.

First, O.C.G.A. § 51-12-33(d) requires defendants who wish to have the negligence or fault of a nonparty considered by the trier of fact to "give[] notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault."  However, federal courts in Georgia have held that the notice requirement does not negate Federal

---

[2]  Generally, "a motion to strike is only appropriately addressed towards matters contained in the pleadings."  *Smith v. Se. Stages, Inc.*, 479 F. Supp. 593, 594 (N.D. Ga. 1977); *see also* Fed. R. Civ. P. 12(f).  While TransAm's Notice of Non-Party Fault is not a pleading under Federal Rule of Civil Procedure 7(a), it concerns a potential defense which could have been included in an answer and federal courts in Georgia have previously addressed the merits of motions to strike notices filed pursuant to O.C.G.A. § 51-12-33(d).  *See e.g., Haynes v. Lawrence Transp. Co.*, 2016 WL 1359185, at *5 (N.D. Ga. Feb. 1, 2016).

Rule of Civil Procedure 8(c)'s requirement that all affirmative defenses be expressly stated in a defendant's answer.  *See Cooper v. Marten Transp., Ltd.*, 2014 WL 11517830, at \*3-\*4 (N.D. Ga. May 23, 2014). Because TransAm did not specifically "raise Non-Party Apportionment as a defense," Garvin argues the defense is waived and the Notice should be struck.  Doc. 49 at 3.

As an initial matter, it is not clear that stating that "[any] injuries, losses, or damages alleged by Plaintiff were proximately caused or contributed to by a superseding and intervening cause" and asserting a "contributory/comparative negligence" defense was insufficient for TransAm to raise a non-party fault affirmative defense.  *See* doc. 13 at 2-3; *cf. Cooper*, 2014 WL 11517830, at \*4 (finding that the defendants had not raised non-party fault as an affirmative defense when they failed "to expressly plead *comparative fault* in their Answer" (emphasis added)). Regardless, Rule 8(c) requires only that a plaintiff be placed on *notice* as to any issues or defenses that may be raised at trial.  *See Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988); *cf. Kirk v. Jefferson Cap. Sys., LLC*, 2023 WL 7388910, at \*1 (M.D. Ala. Nov. 8, 2023) ("[It] appears

that the Eleventh Circuit has not extended the *Twombly/Iqbal* plausibility standard to affirmative defenses.").

> When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.  And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.

*Hassan*, 842 F.2d at 263.  Here, Garvin had notice that TransAm would likely pursue an affirmative defense of non-party fault specifically regarding Lozanne's decision to perform surgery on Garvin.  Stevenson, TransAm's expert, opined in a report produced on February 3, 2023, that the July 8, 2020 laminectomy was "not necessary or appropriate" and "made [Garvin's] neck pain worse."  Doc. 55-3 at 3-4.  On June 20, 2023, Stevenson testified in his deposition that he believed Lozanne committed medical malpractice in proceeding with the surgery.  Doc 55-4 at 4-5.  He did so upon probing from Garvin's own counsel.  *See id.* at 3.  Stevenson's report and deposition "demonstrate that the parties were at least somewhat interested in whether" Lozanne's decision to proceed with the

laminectomy "was at all to blame for" Garvin's condition.  *Cooper*, 2014 WL 11517830, at *5.

Because Garvin had notice that TransAm would likely pursue a defense of non-party fault as to Lozanne's decision to proceed with surgery, he is not prejudiced by any failure to comply with Rule 8(c).[3] *Hassan*, 842 F.2d at 263.  Therefore, "it is not error for the trial court to hear evidence on the issue."  *Id.*; *see also Cooper*, 2014 WL 11517830, at *4-*5 (allowing defendants to proceed with apportionment of non-party fault in part because plaintiffs had notice that defendants might raise that defense); *Knieper v. Wright*, 2018 WL 11330169, at *4 (N.D. Ga. Dec. 18, 2018) (same).  Additionally, for the reasons stated below, the Court will allow TransAm to file an amended answer.  Therefore, Garvin's argument that the Notice of Non-Party Fault should be struck because TransAm "failed to raise Non-Party Apportionment as a defense" fails.  *See* doc. 49 at 3-4.

Second, Garvin argues that the version of O.C.G.A. § 51-12-33(b) in effect when he filed his operative Complaint on March 21, 2022, does not

---

[3]  Notably, Garvin does not even allege to have been prejudiced by TransAm's failure to specifically raise apportionment of non-party fault regarding Lozanne's decision to perform surgery as an affirmative defense in its Answer.  *See* doc. 49.

allow apportionment of damages in "tort actions brought against a single defendant." *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 862 S.E.2d 295, 302 (Ga. 2021); *see also* doc. 49 at 4-8.  Subsection (b) now allows apportionment of damages among all liable persons or entities "[w]here an action is brought against *one or more persons*," *see* O.C.G.A. § 51-12-33(b) (emphasis added), but until the statute was amended on May 13, 2022, it only allowed apportionment of damages among all liable persons "when an action is brought against *more than one person*." *See Alston & Bird, LLP*, 862 S.E.2d at 354 (quoting O.C.G.A. § 51-12-33(b)) (emphasis added).   Though this action was brought against three defendants, *see* doc. 8, only one remains, and Garvin urges the Court to apply the Georgia Court of Appeals' interpretation of the old provision. *See* doc. 49 at 5-8.  In a case decided after the Georgia Supreme Court's decision in *Alston & Bird*, the Georgia Court of Appeals held that whether a case "is brought" against a single defendant is determined by the number of defendants brought to trial, not the number of the defendants the case was initiated against. *See Georgia CVS Pharmacy, LLC v. Carmichael*, 865 S.E.2d 559, 570-71 (Ga. App. 2021) (barring apportionment of damages pursuant to O.C.G.A. § 51-12-33(b) on the

10

grounds that it was a single defendant case, even though the lawsuit was brought against multiple defendants, when only one remained at the time the case proceeded to trial) *aff'd on other grounds*, *Georgia CVS Pharmacy, LLC v. Carmichael*, 890 S.E.2d 209, 231 n.16 (Ga. 2023). Garvin argues that because only TransAm remains as a defendant in this case, the case "is [not] brought against more than one person," and apportionment of damages is barred under the old O.C.G.A. § 51-12-33(b).  Doc. 49 at 4-8.  If TransAm cannot apportion damages, Garvin argues, its Notice of Non-Party Fault should be struck.

But TransAm's "notice of nonparty fault concerns the apportionment of fault, not damages." *Dennis v. D&F Equipment Sales, Inc.*, 2016 WL 3753085, at *2 (M.D. Ga. Jul. 11, 2016).  TransAm's Notice states only that:

> [T]he finder of fact shoulder consider the *fault* of Dr. Lozanne for improperly choosing to proceed forward with the laminectomy surgery as part of the causation analysis in this case.   As provided under O.C.G.A. § 51-12-33(c), "[i]n assessing percentages of fault, the trier of fact *shall consider the fault of all persons or entities who contributed to the alleged injury or damages*, regardless of whether the person

or entity was, or could have been, named as a party to the suit."

Doc. 42 at 2 (emphasis added).

The apportionment of "fault" (which TransAm seeks) and the apportionment of "damages" (which Garvin opposes) are distinct. *See Alston & Bird, LLP*, 862 S.E.2d at 298-99 (analyzing the statutory text of O.C.G.A. § 51-12-33). O.C.G.A. § 51-12-33(c), which TransAm relies on in its Notice, "tells the trier of fact how to assess 'percentages of fault' that are to be used under other subsections of the [apportionment] statute, but it does not itself authorize any apportionment of damages." *Alston & Bird, LLP*, 862 S.E.2d at 299. The finder of fact must consider nonparty fault when determining percentages of fault, but whether the damages may then be reduced according to the percentages of fault is dependent on the applicability of subsection (b). *Id.* at 300. For example, in *Alston & Bird*, the jury apportioned fault for defendant Alston & Bird at 32%, plaintiff Hatcher Management Holdings at 8%, and non-party Maury Hatcher at 60% pursuant to subsection (c). *Id.* at 297.[4]  Because

---

[4] Prior to trial, the trial court granted Plaintiff's Motion to Strike Alston & Bird's notice of nonparty fault. *See Alston & Bird LLP v. Hatcher Management Holdings, LLC*, 785 S.E.2d 541, 543 (Ga. App. 2016). The Georgia Court of Appeals reversed, acknowledging that the then-governing O.C.G.A. § 51-12-33(b) "clearly and unambiguously limits apportionment of damages to cases '[w]here an action is

the case was only brought against one defendant, however, damages could only be reduced by 8%–plaintiff's share of the fault–rather than 68%–the combined fault of the plaintiff and non-party. *Id.* at 298; *see also* O.C.G.A. § 51-12-33(a) (requiring a reduction of damages proportional to the percentage of the plaintiff's fault).

That the damages could only be reduced by the plaintiff's share of fault did not necessarily invalidate the jury's apportionment of fault to a non-party. Again, the "determinations of 'damages' and 'fault' are distinct." *Alston & Bird, LLP*, 862 S.E.2d at 298. Apportionment of non-party *fault* in a single defendant case is not prohibited by the version of O.C.G.A. § 51-12-33(b) in effect when Garvin filed his operative complaint. In so far as TransAm's Notice of Non-Party Fault seeks the apportionment of fault as to Lozanne, Garvin's argument that the Notice should be struck because the apportionment of damages may be prohibited fails. To the extent TransAm can prove that Lozanne breached "a legal duty in the nature of tort that [was] owed" to Garvin, "the breach of which is a proximate cause of his injury," TransAm may

---

brought against more than one person . . . .," but explaining "apportioning fault, not damages, is the issue in this case." *Id.* at 543.

ask the jury to consider the fault of Lozanne in its causation analysis. *Zaldivar v. Prickett*, 774 S.E.2d 688, 694 (Ga. 2015) (defining "fault" under O.C.G.A. § 51-12-33(c)); *see also Dennis*, 2016 WL 3753085, at *2 (allowing the trier of fact to assign fault to a non-party under O.C.G.A. § 51-12-33(c) in a single defendant case). The Motion to Strike is, therefore, **DENIED**. Doc. 49. The implications of any assignment of fault by the jury to Lozanne, including whether any award of damages should be reduced pursuant to O.C.G.A. § 51-12-33(b), is not currently before the Court. The parties remain free to raise the issue, at the appropriate time and in the appropriate manner, consistent with the presiding District Judge's trial management procedures.

## III.   MOTION FOR LEAVE TO AMEND ANSWER

Apparently in response to Garvin's argument that TransAm should not be able to pursue apportionment of non-party fault pursuant to O.C.G.A. § 51-12-33(c) because it did not specifically raise the non-party fault of Lozanne as an affirmative defense its answer, TransAm moves for leave to amend its answer. Doc. 55. When a motion for leave to amend is filed after the deadline to amend pleadings as set forth in the scheduling order, the moving party "must first demonstrate good cause

under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998). Per the Court's initial Scheduling Order, the deadline to amend pleadings was June 10, 2022. Doc. 21 at 1; *see also* doc. 55-1 at 5 (TransAm "acknowledges that the deadline previously imposed by this Court for filing Motions to Amend was June 10, 2022"). TransAm moved to amend its answer on January 12, 2024. *See* doc. 55. Therefore, TransAm must demonstrate good cause under Federal Rule of Civil Procedure 16(b) before the Court will entertain its arguments on the propriety of amending its answer under Rule 15. *See Sosa*, 133 F.3d at 1419.

### A. Rule 16

Good cause for an extension of a scheduling order's deadlines "exists if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI) Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) (quoting Fed. R. Civ. P. 16 1983 advisory committee notes). Though the general inquiry is whether the moving party could have reasonably met the deadline it seeks to amend, courts may consider other factors in

determining a party's diligence, including: (1) whether the information providing the basis for the proposed amendment was available before the deadline to amend, *see Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007); *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318-19 (11th Cir. 2008); *Green Island Holdings*, LLC, 521 F. App'x at 800; *Snadon v. Sew-Eurodrive, Inc.*, 859 F. App'x 896, 897 (11th Cir. 2021); (2) the pendency of any motions for summary judgment at the time the party moves to amend the pleadings, *see Smith*, 487 F.3d at 1367; (3) whether the Court had specifically given the movant an opportunity to amend outside the timeframe in the scheduling order earlier in the litigation, s*ee Green Island Holdings, LLC*, 521 F. App'x at 799-800; and (4) "how soon the party moved to amend after discovering the information." *Snadon*, 859 F. App'x at 897.

Garvin centers his opposition to amendment on TransAm's lack of diligence in requesting leave to amend. *See generally* doc. 64. He points out that TransAm did not move to amend its answer to include non-party fault as to Lozanne's decision to perform surgery until nearly a year after disclosing Stevenson's report. *See id.* at 1-2; *see also* doc. 55; doc. 55-3. Because Stevenson opined in the report that Lozanne should not have

proceeded with surgery, Garvin argues that the basis for amendment existed as early as February 2023 and waiting to request leave to amend until January 2024 was not diligent. *See* doc. 64 at 2.

TransAm, on the other hand, argues it was diligent in attempting to comply with the deadline to amend in the initial Scheduling Order, but that it could not have met the June 10, 2022 deadline to amend pleadings because the particulars of its affirmative defense were not clear until discovery was well underway. *See* doc. 55-1 at 8-9. To demonstrate non-party "fault" under O.C.G.A. § 55-12-33(c), a defendant must show that the non-party owed "a legal duty in the nature of a tort" to the plaintiff, the non-party breached that duty, and "the breach . . . [was] a proximate cause" of the plaintiff's injury. *Zaldivar*, 774 S.E.2d at 694. TransAm intends to show that Lozanne committed medical malpractice. *See* doc. 55-1 at 3. Under Georgia law, to support a medical malpractice claim, an expert must establish the applicable standard of care and causation. *See McDowell v. Brown*, 392 F.3d 1283, 1295-99 (11th Cir. 2004). Stevenson did not submit his report stating that the laminectomy was not "necessary or appropriate" and that it made Garvin's neck pain worse until January 22, 2023. *See* doc. 55-3 at 4-5. Stevenson did not explicitly

testify that he believed Lozanne committed medical malpractice until June 20, 2023. *See* doc. 55-4 at 1, 4-5. The parties did not depose Lozanne until August 31, 2023. *See* doc. 55-1 at 9. TransAm argues that it did not have all the information it needed to determine whether it could raise non-party fault as to Lozanne until this time. *See id.* at 8-9.

The Court finds TransAm has demonstrated good cause under Rule 16(b). Its expert did not opine that Lozanne should not have performed the laminectomy until late January 2023, and it did not finish gathering information related to Lozanne and the laminectomy until at least August 31, 2023. *See* doc. 55-1 at 9; doc. 55-3 at 4-5; doc. 55-4 at 1, 4-5. "[T]he basis for the proposed affirmative defense" was simply not "available before the deadline for amended pleadings." *Green Island Holdings, LLC*, 521 F. App'x at 800; *see also Sosa*, 133 F.3d at 1419 (considering whether the basis for the amendment was available to the movant before the deadline for filing amended pleadings); *Smith*, 487 F.3d at 1367 (same); *Romero*, 552 F.3d at 1318-19 (same). The partial motion for summary judgment currently pending in this case was filed by TransAm itself and was "pending" for less than an hour before TransAm moved for leave to amend. *See generally* docket; *cf. Smith*, 487

18

F.3d at 1366-67 (finding a lack of good cause when, among other things, movant filed his motion to amend one month after the nonmoving party filed a motion for summary judgment). Additionally, the Court has not ever specifically invited TransAm to amend its answer. *See generally* docket; *cf. Green Island Holdings, LLC*, 521 F. App'x at 799-801 (noting that the Court had specifically invited the movant to replead months earlier and indicated then that would be the last opportunity the movant would have to amend). While TransAm could have filed for leave to amend before January 12, 2024, only four-and-a-half months passed between Lozanne's deposition and TransAm's motion to amend. *See* doc. 55; doc. 55-1 at 9. This delay is not so egregious as to be fatal. *Cf. Snadon*, 859 F. App'x at 897 (finding a lack of diligence in seeking to amend when the information supporting the amendment was available more than eighteen months earlier).

TransAm could not have met the June 10, 2022 deadline to amend pleadings with any amount of diligence. *See Green Island Holdings, LLC*, 521 F. App'x at 800. The Court therefore finds good cause pursuant to Rule 16(b) to amend the operative Scheduling Order, *see* doc. 48, and retroactively **EXTENDS** the deadline for Filing Motions to Amend or

Add Parties, *see* doc. 21 at 1, to permit TransAm to file its Amended Answer.

      B. <u>Rule 15</u>

Having found good cause under Rule 16(b), the Court now turns to whether TransAm should be allowed to amend pursuant to Rule 15(a). *See Sosa*, 133 F.3d at 1419. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless a substantial reason exists to deny leave to amend," the Court lacks discretion to deny TransAm leave to amend its Answer. *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406-07 (11th Cir. 1989). Courts consider several factors when determining whether allowing the amendment is appropriate, including undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies; undue prejudice to the opposing party; and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014).

TransAm has not previously amended its Answer, so there is no "repeated failure to cure deficiencies." *Foman*, 371 at 182; *see generally*

docket.  Nor is there any indication that TransAm is acting in bad faith or with a dilatory motive.  *See* doc. 55-1 at 3 (explaining that TransAm did not seek leave to amend its Answer earlier because it believed the intervening cause and comparative negligence language in its Third and Tenth Defenses sufficiently addressed non-party fault); doc. 64 at 2-3 (opposing amendment under Rule 15 on futility grounds only).  For the same reasons the Court found TransAm acted diligently under Rule 16(b), the Court finds that this amendment does not "follow[] undue delay[]."  *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999).  Allowing this amendment will also not cause undue delay.  *See id.* (finding that the district court did not abuse its discretion in denying a motion to amend when amendment would have "*caused* undue delay" (emphasis added)); *see also* doc. 55-1 at 7 n.4 (noting the discrepancy among courts as to whether "undue delay" refers to whether an amendment will result in undue delay or comes after undue delay).  Furthermore, Garvin does not allege that he would be prejudiced by allowing TransAm to file its proposed Amended Answer, doc. 55-5.  *See generally* doc. 64.  For the same reasons the Court found Garvin was not prejudiced by any failure on TransAm's part to comply with Rule 8(c), the

21

Court finds that there is no risk of prejudice to Garvin in allowing TransAm to amend its answer.

Garvin's only argument for why amendment should not be permitted under Rule 15(a)(2) is that amendment would be futile "[f]or the reasons set forth in Plaintiff's Motion to Strike TransAm's apportionment defense." Doc. 64 at 2. But the Court has rejected these arguments, so amendment to clarify TransAm's affirmative defense is not futile.

Having found good cause to amend the operative scheduling order deadline, and finding no substantial reason to deny TransAm leave to amend its answer, the Court **GRANTS** TransAm's Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint. Doc. 55. TransAm is **DIRECTED** to file a signed copy of its Amended Answer, *see* doc. 55-5, within 7 days of the date of this Order.

## IV.   CONCLUSION

Garvin's Motion to Strike Defendant's Notice of Non-Party Fault is **DENIED**. Doc. 49. TransAm's Motion for Leave of Court to Amend Defendant's Answer to Plaintiff's Complaint is **GRANTED**. Doc. 55. Pursuant to Rule 16(b), the Court retroactively **EXTENDS** the deadline

for Filing Motions to Amend or Add Parties to seven days after the entry of this Order.   TransAm is **DIRECTED** to file a signed copy of its Amended Answer to Plaintiff's Amended Complaint, *see* doc. 55-5, within seven days of the date of this Order.

     **SO ORDERED**, this 22nd day of April, 2024.

_____

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA