## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| GREGORY GARVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-062 |
| | ) | |
| TRANSAM TRUCKING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Plaintiff Gregory Garvin seeks to exclude the testimony of Defendant TransAm Trucking, Inc.'s experts Tami Rockholt, doc. 50, and Dr. Bryce Anderson, doc. 57. Defendant has responded in opposition, docs. 60 (Anderson) & 62 (Rockholt), and Plaintiff has replied, docs. 71 (Rockholt) & 72 (Anderson). Meanwhile, Defendant seeks to exclude the testimony of Plaintiff's experts David Stopper, doc. 52, Oliver Wood, Jr., Ph.D., doc. 53, and Steven Poletti, M.D. and Glen K. Adams, MRC, CRC, CEES, doc. 54. Plaintiff has responded in opposition, docs. 63 (Poletti & Adams), 65 (Wood), & 66 (Stopper) and Defendant has replied in support of its motion to exclude Wood's testimony, doc. 69. These motions have been referred to the undersigned and are all ripe for review.

## Background

This case involves a collision between a tractor trailer driven by Marlon Kelley, in the course of his employment by Defendant TransAm Trucking, and a parked tractor trailer occupied by Plaintiff Gregory Garvin. *See, e.g.*, doc. 8 at 3; doc. 50 at 1; doc. 52-1 at 1-2. Plaintiff alleges that, as a result of the collision, he "suffered severe spine injuries and a spinal cord injury." Doc. 8 at 6. Plaintiff initially filed suit against TransAm Trucking, Marlon Kelley, and Carolina Casualty Insurance Company. *See* doc. 1. He filed an Amended Complaint naming TransAm Trucking, Kelley, and RLI Insurance Company. *See* doc. 8. Plaintiff later voluntarily dismissed RLI Insurance Company and Carolina Casualty Insurance Company, doc. 18, and Marlon Kelley, doc. 36. TransAm Trucking is the last remaining defendant.

In his Amended Complaint, Plaintiff asserted claims against TransAm Trucking for imputed liability for the negligence of Marlon Kelley, doc. 8 at 3-4, and for negligent hiring, training and supervision, *id.* at 4-5. Plaintiff also sought punitive damages. *Id.* at 6. TransAm Trucking filed a Motion for Partial Summary Judgment on Plaintiff's direct negligence claims and punitive damages claim. Doc. 51-1 at 2.

After Plaintiff responded that he "concedes his punitive damage claim, as well as his negligent training, hiring, retention, entrustment, and supervision claims," doc. 68 at 1, the District Judge granted Defendant's Motion, doc. 74. Therefore, only Plaintiff's imputed liability claim against Defendant remains. *Id.* at 2.

Against that backdrop, the Court considers the challenges to the parties' experts. Plaintiff identified two experts in his Rule 26(a)(2) disclosures,[1] David A. Stopper, an expert "likely to have knowledge pertaining to collision investigation, traffic safety, commercial motor vehicle operations and related motor carrier safety regulations," and Oliver G. Wood, Jr., an expert "likely to have knowledge pertaining to total financial loss to Plaintiff due to the accident that is the subject of this lawsuit." Doc. 54-2 at 2. Defendant moves to exclude the testimony of Stopper and moves to exclude, or limit, the testimony of Wood, under Federal Rules of Evidence 702 and 403 and *Daubert*.[2] *See* docs. 52 & 53.

---

[1] As Defendant points out, *see* doc. 54-1 at 2 n.1, Plaintiff's disclosures refer to Federal Rule of Civil Procedure 26(a)(3), but were provided on January 5, 2023, the deadline for Plaintiff to furnish expert witness reports under the then-operative Amended Scheduling Order, and therefore appear to be the expert disclosures contemplated by Federal Rule of Civil Procedure 26(a)(2)(B). *Compare* doc. 54-2 *with* doc. 26 at 1.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

3

Plaintiff also provided Supplemental Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) and identified, as relevant here, Glen K. Adams, a vocational evaluator, and Dr. Steven Poletti, an independent medical examiner. Doc. 54-3 at 2-3. Defendant seeks exclusion of Adams and Poletti under Federal Rule of Civil Procedure 37 for Plaintiff's failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B). *See* doc. 54.

On the other side of the case, Defendant identified Tamera G. Rockholt, RN, BSN, as a medical billing expert, doc. 62-1, and Bryce Anderson as a biomechanical expert, doc. 60-2. Plaintiff moves to exclude Rockholt's opinions, arguing they do not meet the Rule 702 standard as set out in *Daubert*, "impermissibly inject collateral source into this case," and violate Federal Rule of Evidence 403. Doc. 50 at 3-4. Plaintiff also seeks exclusion of Anderson's opinions pursuant to Rule 702 and *Daubert*. Doc. 57 at 3-8.

## Federal Rules of Civil Procedure 26 and 37

Before turning to the parties' substantive arguments about their experts' testimony, the Court first addresses Defendant's procedural challenge to Plaintiff's experts Adams and Poletti. As Defendant explains, the deadline for Plaintiff to disclose his expert witnesses and

provide expert witness reports was January 5, 2023.  Doc. 54-1 at 2; *see also* doc. 26 at 1; doc. 63 at 1 ("Plaintiff concedes that per this Court's Amended Scheduling Order dated September 2, 2022, the deadline to furnish expert witness reports was January 5, 2023.").  Plaintiff did disclose two experts by that deadline.  Doc. 54-2.  Then, six days later, Plaintiff provided "Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2)."  Doc. 54-3.  In it, he identified his treating urgent care physician Dr. Arthur Kennedy, his treating physical therapists Kimberly Shull-Massey and William Reeside, and his treating general surgeons Dr. Karl Lozanne and Dr. Jason Highsmith.  *Id.*  He also identified vocational evaluator Glen K. Adams and independent medical examiner Dr. Steven Poletti.  *Id.*

Although Plaintiff's supplemental disclosure cites to Federal Rule of Civil Procedure 26(a)(2)(B), doc. 54-3 at 1, Plaintiff explains that these witnesses should have been disclosed pursuant to Rule 26(a)(2)(C), "but a scrivener's error cited (B) instead of (C)."  Doc. 63 at 2.  Defendant assumed as much, observing that the disclosures "appear to be made pursuant to Rule 26(a)(2)([C]), and Plaintiff appears to intend to have each of the seven listed witnesses testify in their capacity as medical

providers who treated Plaintiff." Doc. 54-1 at 2-3. Defendant argues that Adams and Poletti were improperly and untimely disclosed because they "are not treating physicians within the ambit of Rule 26 who are able to testify regarding their observations of Plaintiff during the course of their treatment; rather, they are witnesses who have been specifically hired for evaluation and testimony in this case . . . ." *Id.* at 3. Therefore, Defendant contends they "constitute expert witnesses who would have been required to produce written reports comporting to the requirements of Rule 26(a)(2)(B)," and their failure to do so merits exclusion. *Id.* at 3-4. In response, Plaintiff argues the two should be allowed to testify under Rule 26(a)(2)(C), and that any untimeliness or deficiency is both harmless and substantially justified. *See generally* doc. 63. Defendant did not reply. *See generally* docket.

As the Eleventh Circuit has recently explained, "Federal Rule of Civil Procedure 26(a)(2) outlines two types of pretrial disclosures for expert witnesses—one lengthy and one more sparing." *Cedant v. United States*, 75 F.4th 1314, 1317 (11th Cir. 2023). "These rules place a greater burden on retained experts (who initially got involved in the suit to testify) than they do on non-retained experts (who have some

independent connection to the facts underlying the suit)." *Id.* at 1319.

The Court further explained the difference between the two standards:

> A witness who is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" has significant pretrial disclosure requirements under Rule 26(a)(2)(B).  Those include a thorough "written report" with six substantive parts, unless "otherwise stipulated or ordered by the court."  Fed. R. Civ. P. 26(a)(2)(B).  For all other expert witnesses, only a less onerous, two-part Rule 26(a)(2)(C) "disclosure" is required, again unless "otherwise stipulated or ordered by the court."  Fed. R. Civ. P. 26(a)(2)(C).

> The difference between written reports and disclosures is meaningful.  For one, a Rule 26(a)(2)(B) written report must be "prepared and signed" by an expert, while a Rule 26(a)(2)(C) disclosure may be submitted by a party on behalf of its expert.  *See* Fed. R. Civ. P. 26(a)(2)(B).  And because written reports must include the "basis and reasons" for "all opinions" offered by the expert, plus the "facts or data considered by the witness," they are often sprawling compared to the short summary of opinions required in a Rule 26(a)(2)(C) disclosure.  Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).

*Id.* at 1320 (footnotes omitted).

Given the two distinct standards, determining whether Adams and Poletti are subject to the more strenuous requirements of Rule 26(a)(2)(B), or instead pass muster by complying with the relatively simpler requirements of Rule 26(a)(2)(C), is an important threshold issue.  In *Cedant*, the Eleventh Circuit provided specific guidance to use when making this determination.  "Rule 26(a)(2)(B) asks [courts] to

assess the initial reason the expert was hired.  [Courts] look to when an expert was 'retained' or 'specially employed' by a party and evaluate whether that retention was 'to provide expert testimony in the case' or for some other purpose." *Cedant*, 75 F.4th at 1322.  In other words, "an expert's status as a retained witness depends on the original purpose of his retention." *Id.*  In the specific context of physicians, "whether a doctor is retained (or not) depends on whether she was hired to testify or to treat." *Id.* at 1326.

In its motion, Defendant points to materials provided by Plaintiff in discovery that show that "Adams and Poletti were retained during the course of Plaintiff's parallel workers' compensation action, which also arises from the subject incident."  Doc. 54-1 at 3 n.4.  Defendant asserts that Adams was retained by Plaintiff's counsel in the parallel workers' compensation claim, not to provide medical or other treatment, but "to provide tangible opinions that could be used in litigation." *Id.* at 9.  Similarly, Defendant explains, Dr. Poletti "was retained by Plaintiff's counsel during the course of Plaintiff's workers' compensation action relating to the subject incident solely to perform an IME on Plaintiff." *Id.* at 10.  Therefore, Defendant argues, "these witnesses were not retained

to provide medical treatment to Plaintiff, and were rather retained to provide litigation-specific tasks, presumably up to and including testimony, which necessitates that they be subject to the reporting requirements of Rule 26(a)(2)(B)." *Id.* at 6.

In response, Plaintiff confirms that Poletti and Adams were retained during Plaintiff's workers' compensation claim, were paid for their time in evaluating Plaintiff's injuries, and prepared written reports summarizing their conclusions. Doc. 63 at 2. Plaintiff explains that Dr. Poletti conducted an Independent Medical Examination of Plaintiff on May 13, 2021, and proffered an opinion in conjunction with Plaintiff's workers' compensation claim, all before Plaintiff filed this lawsuit. *Id.* Similarly, Adams performed a vocational assessment of Plaintiff on February 16, 2021, as part of Plaintiff's workers' compensation claim, and prepared a written report and later addendum all before Plaintiff filed this lawsuit. *Id.* Therefore, Plaintiff argues they should be permitted to testify under Rule 26(a)(2)(C). *Id.* at 3; *see also id.* at 5 ("Neither Dr. Poletti nor Mr. Adams were required to provide a written report, as both experts evaluated Plaintiff in conjunction with his South Carolina

Workers' Compensation claim far before this personal injury action commenced in the Southern District of Georgia.").

Applying the Eleventh Circuit's rubric from *Cedant*, both Adams and Dr. Poletti are subject to the requirements of Rule 26(a)(2)(B) because they were hired by Plaintiff and his counsel to testify, not to treat. *See* 75 F.4th at 1326. Plaintiff's counsel contacted Adams and requested that he "determine the vocational impact of Mr. Garvin's injuries sustained on March 20, 2020," and Adams conducted the assessment at the attorney's office. Doc. 54-4 at 1. There is no treatment discussed in either Adams' initial Vocational Assessment or his Addendum. *See generally* docs. 54-4, 54-5. Dr. Poletti reviewed Plaintiff's MRI scan, examined him, and then prepared a letter for Plaintiff's counsel containing his opinions about Plaintiff's injuries. *See* doc. 54-7. There is nothing to indicate he treated Plaintiff, either. *See generally id.* Plaintiff does not suggest that either expert provided any treatment or other services distinct from providing opinions and testimony. *See generally* doc. 63. Instead, he argues that the timing of their retention should be considered, as well as their status as "independent experts." *Id.* at 2. Those arguments are unavailing. The

"initial reason the expert[s] w[ere] hired" was to provide opinions for litigation; it was "the original purpose of [their] retention." *Cedant*, 75 F.4th at 1321-22.

As Defendant correctly argues,[3] Plaintiff's disclosures of both Adams and Dr. Poletti are deficient under the more rigorous disclosure requirements of Rule 26(a)(2)(B).[4]   *See* doc. 54-1 at 7-11.   Plaintiff disclosed Adams as a vocational evaluator, but then mistakenly stated that he "completed an Independent Medical Evaluation of Mr. Garvin's health."  Doc. 54-3 at 2.  The record shows that Adams instead completed

---

[3] Defendant also correctly argues that the disclosures are untimely.  *Compare* doc. 54-3 (dated January 11, 2023) *with* doc. 26 at 1 (Plaintiff's expert reports due January 5, 2023); *see also* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make [expert] disclosures at the times and in the sequence that the court orders.").  While the parties do have a continuing obligation to supplement their expert disclosures, *see* Fed. R. Civ. P. 26(a)(2)(E), the duty to supplement does not facilitate an end-run around the initial duty of complete and timely disclosure.  *Sommers v. Hall*, 2010 WL 3463608, at *2-*3 (S.D. Ga. Sept. 1, 2010) (discussing the "obvious potential for abuse" in the rule permitting a party to supplement an expert report); *see also Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1363, n.5 (S.D. Ga. 2016) ("[T]he rules and case law require timely disclosure and timely supplementation; trial by ambush is not permitted.  Nor are reports that are blatantly untimely or rely on supplementation to dodge a deadline.").

[4] Rule 26(a)(2)(B) requires: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications . . . ; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."

a vocational assessment. *See, e.g.*, doc. 54-4. Plaintiff's expectation is that Adams will "offer fact and opinion testimony in this case" about "the nature and treatment of Mr. Garvin." Doc. 54-3 at 2. Plaintiff also produced Adams' Vocational Assessment and Addendum. *See* doc. 63 at 3; *see also* docs. 54-4, 54-5. While the disclosure and accompanying reports do provide some information about Adams' anticipated opinion, that Plaintiff is "totally vocationally disabled as a result of the injury sustained on March 20, 2020," *see* doc. 54-4 at 14, it does not contain all the information required by Rule 26(a)(2)(B). *See generally id.* Dr. Poletti's letter to Plaintiff's counsel is even more deficient, only stating that he reviewed Mr. Garvin's MRI scan and CT scan of his cervical spine, examined Mr. Garvin, and expressed his opinion that "this man is totally and permanently disabled as it relates to spinal cord compression and damage." Doc. 54-7. Plaintiff's written disclosure of Dr. Poletti does not add much. *See* doc. 54-3 at 3. Plaintiff does not appear to argue that either disclosure meets the Rule 26(a)(2)(B) requirements. *See generally* doc. 63.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019). As the nondisclosing party, Plaintiff bears the burden of establishing substantial justification or harmlessness. *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009).

"Substantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply." *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 682 (M.D. Fla. 2010) (internal quotation marks and citations omitted). Plaintiff argues that it is "reasonable" for the parties to "differ as to whether Plaintiff was required to comply with disclosing Dr. Poletti and Mr. Adams pursuant to Rule 26(a)(2)(B) versus Rule (a)(2)(C)," because "[t]his is a unique circumstance," where the witnesses "were paid for their time as independent experts in Plaintiff's underlying administrative South Carolina Workers' Compensation claim, which fully commenced before the filing of his personal injury case, before a different tribunal." Doc. 63 at 6 (emphasis omitted). The argument is

13

unpersuasive.[5]  Plaintiff admits that both Adams and Dr. Poletti were paid for their time as experts, offered opinions based on that expertise, and now Plaintiff wishes to use those expert opinions to support his claims in this case.  Therefore, a compliant Rule 26(a)(2)(B) disclosure was clearly required and Plaintiff's failure to do so was not substantially justified.

Plaintiff also argues that his failure to properly disclose Adams and Dr. Poletti was harmless.  To determine harmlessness, courts, including this one, apply a five-factor test: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial;(4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.  *See Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012); *Rangel v.*

---

[5] Plaintiff cites no authority supporting his interpretation of the Rule.  *Cedant* makes clear that "an expert is 'retained' . . . if his connection to the litigation was, from the beginning, as a paid expert witness."  75 F.4th at 1321.  There is no reasonable basis to argue that either of the witnesses at issue were not "retained," if only to testify in another proceeding.  Charitably, the Court might construe Plaintiff's argument as relying on the Rule's application to experts retained to provide testimony "in the case," to exclude experts retained to provide testimony in other proceedings arising out of the same facts.  *See* Fed. R. Civ. P. 26(a)(2)(B).  Any such argument would appear extremely strained.  Since, as discussed below, Plaintiff has shown that his failure to comply with Rule 26(a)(2)(B) was harmless, the extent to which it was not substantially justified is merely academic.

*Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016) (citing *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); *Kraese v. Jialiang Qi*, 2021 WL 640826, at *4-*5 (S.D. Ga. Feb. 18, 2021).

Using these factors to frame his argument, Plaintiff contends Defendant could not possibly be surprised, since at the time of his disclosures he also produced both experts' "summaries as to Plaintiff's physical and vocational well-being in the wake of the incident." Doc. 63 at 5. He emphatically argues that Defendant had over a year to cure any surprise, since the disclosures were made in January 2023, "yet [it] made no mention of this issue until the filing of this Motion." *Id.* Defendant did not notice their depositions, seek clarification from Plaintiff, or take any other step until filing this motion, after the discovery period ran. *Id.* Plaintiff asserts that permitting the experts to testify would not disrupt the trial, since they simply "confirm what Plaintiff's other disclosed witnesses testify." *Id.* at 5-6. Although Defendant did not reply, it did anticipate Plaintiff's argument in its initial motion and argues Plaintiff's non-compliance with Rule 26(a)(2)(B) is not harmless. Doc. 54-1 at 12-14. While acknowledging it does possess the two experts' assessments, and acknowledging the disclosures were made in January 2023,

Defendant argues it "is still without an idea as to the specific opinions to which Mr. Adams and Dr. Poletti are expected to testify" and still lack "the other information required pursuant to Rule 26(a)(2)(B) as it pertains to the instant matter." *Id.* at 13.

On balance, the harmlessness factors weigh in favor of permitting Plaintiff's experts to testify. Defendant had been on notice that Plaintiff intended to offer Adams and Dr. Poletti as experts and had their reports—deficient though they may be—for approximately one year before filing this motion. At the time Plaintiff provided his supplemental disclosures on January 11, 2023, *see* doc. 54-3, discovery was scheduled to close on April 13, 2023, *see* doc. 26 at 1. The Court then extended the parties' discovery deadline two times, with discovery finally ending on November 6, 2023. *See* docs. 34 & 38. Defendant had over nine months to raise Plaintiff's deficient disclosures of Adams and Dr. Poletti and chose not to do so. Therefore, factors one and two weigh heavily against Defendant. Also weighing against Defendant is that allowing the evidence will not disrupt the trial since, although trial is scheduled for just over a month away, discovery has closed, and the parties have not yet filed their proposed pretrial order. *See* doc. 38 at 1; doc. 41 at 1; s*ee*

*also generally* docket.  Although Plaintiff's argument suggests the two experts' testimony is somewhat repetitive of other witnesses, *see* doc. 63 at 6, and therefore it does not appear to be terribly important, and as discussed above Plaintiff's explanation for the deficient disclosures is unavailing, these factors do not overcome the weight of the first three. Because Plaintiff met his burden of showing that his deficient disclosures were harmless, exclusion under Rule 37 would be inappropriate. Therefore, the Motion to Exclude Steven Poletti and Glen Adams is **DENIED**.  Doc. 54.

## Federal Rule of Evidence 702

Now that the procedural challenges are resolved, the Court turns to the substantive challenges under the Federal Rules of Evidence and *Daubert*.  Federal Rule of Evidence 702 compels the Court to act as a "gatekeeper" for expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 589 n. 7, 597).  In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").  But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Id.* at 1261.

Lastly, expert testimony must assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591). Expert testimony does not help the trier of fact if it fails to "fit" with the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004); *see also FP Augusta II, LLC v. Core Constr. Servs., LLC*, 2022 WL 626783, at *4 (S.D. Ga. Mar. 3, 2022) (quoting *Korsing v. United States*, 2017 WL 7794276, at *3 (S.D. Fla. Aug. 24, 2011)) ("Under [the helpfulness] requirement, which is concerned primarily with relevance, the Court must consider whether the expert testimony 'is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.' ").

### 1.   Plaintiff's Expert David A. Stopper

Plaintiff identified David Stopper as an expert in the fields of collision investigation, traffic safety, commercial vehicle operations, and

related motor carrier safety regulations.  Doc. 52-3.  In his report, Stopper

opines that Kelley, a CMV/DLC operator, was operating as an employee

driver for Defendant TransAm, that Kelley and TransAm were subject

to, and required to be knowledgeable of, the Federal Motor Carrier Safety

Regulations   and   Commercial   Driver's   License   Regulations   and

Requirements, that Kelley failed to exercise reasonable and ordinary care

for a CDL/CMV operator, that Kelley violated TransAm's internal

handbook by failing to "Get Out and Look (G.O.A.L.)" before the collision,

and that Kelley "failed to exercise reasonable and ordinary care in

operating the truck tractor and semi-trailer at the loading facility and

failed to confirm it was clear to move in reverse from that position."  Doc.

52-4 at 18-19; *see also* doc. 66 at 3 (Plaintiff's summary of Stopper's

opinions).

Defendant moves to exclude Stopper's testimony, conceding his

qualifications, but arguing his anticipated testimony in this case is not

relevant and "does not assist the trier of fact in understanding the issues

in this matter."  Doc. 52-1 at 8.  It argues Stopper's opinions "almost

exclusively relate to Kelley's failure to follow the 'get out and look'

backing policy when backing," which is "uncomplicated and undisputed,"

which renders the opinion merely "an observation, which any lay juror could reasonably be expected to make." *Id.* It also argues that Kelley himself has testified about his familiarity with the G.O.A.L. policy, and therefore "such information can easily be addressed through cross-examination of Kelley," and points out that both Kelley and TransAm have admitted Kelley's negligence in backing his trailer into Plaintiff's tractor. *Id.* at 9. Therefore, it argues the opinion would be futile, and therefore not helpful. *Id.* Finally, it argues Stopper's testimony should be excluded under Rule 403, since it is repetitious and therefore "cumulative or needlessly time consuming." *Id.* (quoting *Frazier*, 387 F.3d at 1263).

Plaintiff's response largely focuses on Stopper's testimony's relevance to his since-dismissed negligent training claim. *See* doc. 66 at 6 ("Mr. Stopper, as a trucking safety expert, would assist the jury in understanding and assessing TransAm's negligence in training Mr. Kelley."). Since Plaintiff conceded his negligent training claim, *see* doc. 68 at 1, and the District Judge dismissed it, *see* doc. 74, those arguments do not demonstrate the testimony's relevance, and therefore, its helpfulness. *See* Fed. R. Evid. 401; *see also Smith v. Austin*, 2023 WL

4847337, at * 4 (S.D. Ga. July 28, 2023) (citing *Banks v. McIntosh Cnty.*, 2022 WL 2758609, at *3 (S.D. Ga. July 14, 2022) ("Any evidence, testimony, or argument related to claims . . . this Court has already dismissed is not relevant to the sole remaining issue . . . .").

Plaintiff does offer argument about Stopper's testimony that is not directly related to his dismissed negligent training claim. He argues that the jury would benefit from Stopper's testimony in determining whether Kelley should have gotten out of his tractor and looked before backing, because "Mr. Stopper's authority and expertise with the Federal Motor Carrier Safety Regulations and trucking safety uniquely position him to assist the jury in understanding TransAm's own policies and procedures—which Mr. Kelley did not adhere to." Doc. 66 at 5. Plaintiff has satisfied its burden of demonstrating that Stopper's opinion "concerns matters that are beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262. Stopper's opinions about "the typical practices and standard of care within the commercial motor vehicle industry" are not within the average juror's knowledge. *See, e.g.,* *Duling v. Domino's Pizza, LLC*, 2015 WL 3407602, at *13-*14 (N.D. Ga. Jan. 14, 2015) (allowing testimony on commercial motor vehicle

industry's standard of care as beyond the knowledge of a layperson).
Indeed, "the average lay person is not familiar with the operation of a
commercial motor vehicle." *Stiefel v. Malone*, 2021 WL 426217, at *13
(N.D. Ala. Feb. 8, 2021); *see also Lohr v. Zehner*, 2014 WL 2832192, at *2
(M.D. Ala. June 23, 2014) ("[T]he circumstances within which a tractor-
trailer driver must exercise care are quite different from the
circumstances with which most jurors will be familiar.").

Additionally, Stopper's opinions are relevant to whether Kelley was
negligent, which is the theory of negligence underlying Plaintiff's
imputed liability claim. *See* doc. 8 at 3-4; *see also Key v. Celadon
Trucking Servs., Inc.*, 2010 WL 11531270, at *5 (S.D. Ga. Feb. 9, 2010)
(finding commercial trucking expert's "testimony regarding the relevant
legal standard of care and his factual testimony relevant to the driver's
actions, which may be within or without the standard of care" to be
"helpful to the fact finder in deciding the issues of negligence."). While
Defendant suggests that it has "admitted that Kelley was negligent in
connection with the subject accident in relation to backing into the
tractor occupied by Plaintiff," doc. 52-1 at 9, it points to its Answer which
provides a more qualified response to Plaintiff's allegations of negligence,

24

*compare* doc. 8 at 3 *with* doc. 13 at 7.  Therefore, for now,[6] Plaintiff's expert offers relevant, helpful testimony on a disputed issue, and its probative value is not outweighed by the danger of "needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  For these reasons, Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness David A. Stopper is **DENIED**.  Doc. 52.

### 2.    Plaintiff's Expert Oliver G. Wood, Jr.

Plaintiff identified Oliver G. Wood, Jr. as an expert "likely to have knowledge pertaining to total financial loss to Plaintiff due to the accident that is the subject of this lawsuit."  Doc. 53-2 at 2.  Wood has a PhD in Economics and has been employed as an economics professor since 1965 and a consulting economist since 1969.  *See* doc. 53-3 at 1. Wood opines that the present value of the financial loss to Plaintiff, combining the loss in earning capacity and loss in personal services

---

[6]  Defendant remains free to renew its objections to Stopper's testimony at trial, especially should it become clear that it does not contest Plaintiff's assertion of its driver's negligence.  However, at this stage in the proceedings, it has not shown that the testimony is clearly inadmissible.  A court has the power to exclude evidence *in limine* when it is clearly inadmissible on all potential grounds and for any purpose. *Luce v. United States*, 469 U.S. 38, 41 (1984).  If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.  *Id.*

because of injuries Plaintiff claims he sustained in the collision, is $1,354,602.  Doc. 53-4 at 2-4.

Defendant, while conceding Wood's qualifications, argues his findings are "plagued by the unreliability of the methods that he utilized to reach such findings."  Doc. 53-1 at 4, 7.  However, instead of attacking Wood's methodology, Defendant challenges Wood's reliance on the unverified, and arguably incorrect, information provided by Plaintiff to perform that methodology.  *Id.* at 7-9.  He argues that Wood "blindly relies on Plaintiff's own unsupported assertions as to his future income," and therefore his calculations are fundamentally flawed and should be either excluded or limited.  *Id.* at 8.  In response, Plaintiff argues that Wood relied on correct and reliable information in making his calculations.  Doc. 65 at 7-8.  Defendant's reply shows that the parties vehemently disagree about the accuracy of the information Wood relied on in performing his calculations.  *See* doc. 69 at 2-6.  However, at least for purposes of the Court's Rule 702 and *Daubert* analysis, the accuracy of the information is not the focus; instead, the Court must consider whether Wood's *methodology* is reliable.

As Defendant acknowledges in its Motion, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left to the jury's consideration."  Doc. 53-1 at 8 (quoting *Dunn v. Pascoe*, 2023 WL 1394886, at *3 (S.D. Ga. Jan. 31, 2023)).  The Southern District of Florida, when confronting a challenge to an economist who relied upon "self-serving, entirely-speculative information from Plaintiffs" that he "did not independently verify," explained "that issue goes to weight, not admissibility."  *Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, 2022 WL 1642865, at *23 (S.D. Fla. Mar. 21, 2022).  In doing so, the Court referred to another case where the District Judge "found it is standard and accepted for damages experts to accept as correct the information provided by the counsel who retained them without independently investigating the accuracy of the information."  *Id.* at *24 (quoting *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2017 WL 10775768, at *17 (S.D. Fla. June 12, 2017) *adopted* 2017 WL 10775767 (S.D. Fla. Dec. 14, 2017)).  Instead of exclusion, the Court found that the expert's failure to verify the

information provided to him by Plaintiffs was "better addressed on cross-examination at trial." *Id.* So too here.

In considering Defendant's challenge, the Court must be mindful that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). That is for the jury. *Id.* Defendant can challenge the bases of Wood's calculations on cross-examination and point out any bias in Plaintiff's self-reported numerical values. For the same reasons, the relevancy of the testimony to the issue of damages is not substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403. Defendant's Motion to Exclude or, in the alternative, Limit the Testimony of Oliver G. Wood, Jr., Ph.D is, therefore, **DENIED**. Doc. 53.

### 3.   **Defendant's Expert Tami Rockholt**

Defendant identified Tamera G. Rockholt, RN, BSN, as a medical billing expert. *See* doc. 62-1 at 2-3. According to Defendant, Rockholt conducted an "Audited Bill Review" and opines that "the collective amount billed by Plaintiff's treating providers are in excess of the 50th and 85th Percentile 'usual and customary' amounts, as well as the

average contracted rates for such services." Doc. 62 at 2 (citing doc. 62-1).  In Rockholt's own words, she "[l]ook[ed] at the reasonable market value for the care that the [Plaintiff] had received," and will testify that the amount Plaintiff's medical providers have billed in this case "is higher than what [she] think[s] is reasonable." Doc. 62-3 at 11-12.  Plaintiff moves to exclude her testimony under Rule 702 and *Daubert*, arguing she is not qualified, her methodology is unreliable, and her testimony would not be helpful. Doc. 50 at 3-4, 7.  Additionally, Plaintiff argues her opinions impermissibly inject collateral source into this case, and her testimony would violate Federal Rule of Evidence 403. *Id.*

Plaintiff first challenges Rockholt's qualifications, arguing she is "not qualified to offer opinions about what South Carolina medical providers should have charged for Mr. Garvin's medical treatment." Doc. 50 at 7-8.  As Defendant summarizes, Rockholt is a Registered Nurse, and has an associate degree and a bachelor's degree in nursing. Doc. 62 at 2; *see also* doc. 62-2.  She has worked as a clinical nurse, a nurse auditor, a patient advocate, and a nurse case manager. Doc. 62-2 at 2.  She began working in the field of medical bill review in 1990. Doc. 62 at 2 (citing doc. 62-3 at 8-9).  Her experience includes auditing

hospital bills, analyzing medical billing patterns, assisting doctors with setting fee schedules, negotiating bills for patients, and investigating medical billing fraud alongside the FBI and California Department of Justice. *Id.* at 2-3. She has provided expert testimony on the topic of medical billing since 2004. *Id.* at 3.

Plaintiff, citing to *Frushtick v. FeroExpress Inc.*, 2022 WL 824239, at *4 (N.D. Ga. Mar. 18, 2022), argues that "purported medical billing experts, such as Ms. Rockholt, are not the type of persons who should be testifying about the value of a plaintiff's medical services." Doc. 50 at 7 (internal quotations and alterations omitted). In *Frushtick*, the Northern District of Georgia was confronted with a proposed medical billing expert and found that she was qualified to analyze whether the plaintiff's providers assigned the right "medical code" for the service being billed but was not qualified to use those codes to determine a reasonable fee. 2022 WL 824239, at *4. The proposed expert was a certified professional coder, had experience as a director of medical billing for two internal medicine practices, and worked as an expert medical billing witness for a litigation consulting company. *Id.* The Northern District found her certification as a professional coder "simply

means she can transform descriptions of medical services or items into universal numerical medical codes," but did not "mean she can quantify the *value* of those services." *Id.* (internal citation, quotations, and alterations omitted). It also found her prior experience as a medical biller insufficient, since, although she established fee schedules and negotiated third-party payor contracts as part of her billing work, it was for different medical services and in different states than the ones at issue in the case. *Id.* Her experience working as a professional expert did not count. *Id.*

To support his argument, Plaintiff further relies on *Castellanos v. Target Corp.*, 568 F. App'x 886 (11th Cir. 2014), where the Eleventh Circuit, in an unpublished decision, affirmed the trial court's exclusion of a purported medical billing expert's opinion. The Northern District in *Frushtick* provided more context for the Eleventh Circuit's affirmance, citing to the trial court record and explaining:

> In [*Castellanos*], an expert sought to testify about the reasonable value of plaintiff's inpatient care based on the same DRG formula [the proposed expert] employs here. Like [the proposed expert], the expert [in *Castellanos*] was a certified professional coder, had worked in a healthcare provider's billing department, had helped establish a "rate structure" for healthcare providers, and often served as an expert witness on the value of medical services. Unlike [the

proposed expert], the expert [in *Castellanos*] had also worked in the relevant geographical area and, as a consultant, had helped several insurers with valuation issues during the claims process.   The trial court still excluded the expert because, although she was qualified to talk about billing codes, defendant had not shown she was qualified to testify as to the reasonableness of the charge.   The Eleventh Circuit affirmed, saying "the trial judge did not abuse her discretion, especially given the expert's broad lack of knowledge of the background and underpinning of the information in the DRG on which the expert relied considerably."   *Castellanos*, 568 F. App'x 886.   The expert was qualified to opine that "the medical services billed did not reflect medical services actually delivered according to the treatment records."   *Id.* at 886 n.2. But she could not testify about "the reasonableness of charges for medical services, assumed to have been delivered."   *Id.*

2022 WL 824239, at *4 (internal citations and quotations omitted).

Plaintiff argues Rockholt's qualifications are "strikingly similar" to those at issue in both *Frushtick* and *Castellanos*.   Doc. 71 at 3.   He compares Rockholt to the expert in *Frushtick*, arguing she is a nurse with "no professional experience with pricing medical procedures and services in Georgia, or South Carolina," and "limited experience in medical billing and more experience in professional testifying."   Doc. 50 at 8.   He emphasizes that her "non-expert witness experiences have all occurred in different states than those at issue here," compared to the expert in *Castellanos* who was excluded even though her experience was within the relevant geographical area.   Doc. 71 at 2.   Defendant attempts to

32

distinguish these cases, since they "pertain to experts other than Rockholt," presumably referring to her qualifications.  Doc. 62 at 7.  It also points to *Powell v. Variety Wholesalers, Inc.*, 2018 WL 3349702 (S.D. Ga. July 9, 2018), where then Chief Judge Hall found a medical billing expert qualified to "testify about the reasonable and customary fee charged for the medical procedures that Plaintiff needed."  *Id.* at *3.  Although she was not competent to testify about causation, she was "qualified to discuss the reasonable and customary fee charged by Plaintiff's providers."  *Id.*

The parties disagree about how Rockholt herself has fared when challenged.  Plaintiff argues that "Ms. Rockholt has been excluded by other courts across the country," but only cites to one case from the Supreme Court of Nevada.  Doc. 50 at 7, 7 n. 23 (citing *Pizarro-Ortega v. Cervantes-Lopez*, 396 P.3d 783 (Nev. 2017)).  However, the Nevada court stated it could not "determine from the record whether the district court properly exercised its discretion in excluding Nurse Rockholt," but concluded the issue did not merit a new trial because another expert "was allowed to testify regarding the reasonableness of [plaintiff's] past medical expenses based on Nurse Rockholt's opinions." *Pizarro-Ortega*,

396 P.3d at 268.   The citation does not support Plaintiff's sweeping assertion that Rockholt has been excluded by "courts across the country." Doc. 50 at 7.   In contrast, Defendant identifies *Carlson v. Sam's West, Inc.*, 2022 WL 428551, at *4 (D. Nev. Feb. 11, 2022), where the United States District Court for the District of Nevada found that Rockholt was qualified to testify on medical billing standards in a slip and fall case based on her "extensive experience in medical billing" and her attendance at and contributions to "conferences to stay abreast of national and local standards." *Id.*   The Court has also independently identified *Barcelon v. Harris*, 2021 WL 2210842, at *7 (D. Nev. June 1, 2021), where the District of Nevada found her "likely qualified to testify as a medical billing expert" in an automobile collision case; notably, it did so over the Plaintiff's challenge to her geographical location in Oregon and not Southern Nevada, where the medical treatment took place. *Id.*

Despite the persuasive authority highlighted by Plaintiff, Defendant has met its burden of demonstrating that Rockholt is qualified.   Her resume shows that she has experience in nursing, hospital bill auditing, medical bill fraud investigating, setting fee schedules, and

34

consulting. *See* doc. 62-2. She has been qualified as an expert in another district, *see Carlson*, 2022 WL 428551, at *4, *and Barcelon*, 2021 WL 2210842, at *7, and an expert with a similar nursing background has been qualified in this district, *see Powell*, 2018 WL 3349702. Her thirty years of experience in the field is sufficient to qualify her as an expert here.

Plaintiff next argues that Rockholt's methodology is unreliable. *See* doc. 50 at 8-12. Rockholt testified during her deposition about her methodology. Doc. 62-3 at 13. She first "audit[s] the bills per the industry standard," "look[s] to make sure the proper [CPT] code was utilized," "make[s] sure that there's not a duplication or unbundling and make[s] sure that the medical records support the bill." *Id.* She then "make[s] recommendations to the bills based on the comparison" and, lastly, "appl[ies] a reasonable customary pricing." *Id.* That "reasonable customary pricing" comes from a database called Fair Health, a paid subscription service that compiles "medical bills from all over the United States." *Id.* at 13-14.

In challenging this methodology, Plaintiff first makes the same problematic sweeping statement as he did when challenging her

credentials; that "[c]ourts applying the *Daubert* factors against Ms.
Rockholt have previously found her methodology unreliable." Doc. 50 at
9. He then cites to the same Supreme Court of Nevada case that does not
actually support his argument and cites to no other cases. *Id.* (citing
*Pizarro-Ortega*, 396 P.3d at 783). Next, Plaintiff argues that Rockholt's
reliance on a database is problematic, since she does not have personal
knowledge of how the database processes the information on which her
opinion relies. Doc. 50 at 10. He points out the lack of evidence
establishing the reliability of the database itself, including evidence
regarding the provenance of the sources of data or sample size for each
billing code or geographic area. *Id.* at 11.

As Defendant compellingly argues, citing to *Dean v. Cherokee
Insurance Company* out of the Northern District of Georgia, any
perceived weakness in the data Rockholt relied upon in conducting her
methodology is appropriately addressed on cross-examination. Doc. 62
at 11-12 (citing *Dean*, 2021 WL 9315270, at *7 (N.D. Ga. Mar. 22, 2021)).
As in *Dean*, the record here shows that the Fair Health database is an
"industry publication[ ] that [is] commonly relied upon by medical
professionals, insurance companies, and others involved in the medical

industry to keep up to date with recent trends in fees charged for medical services." *Dean*, 2021 WL 9315270, at *7; *see also* doc. 62-3 at 16; doc. 62-4 at 5-8. Her reliance on the database does not render her opinion unreliable; instead, "any perceived deficiencies with the methods and bases of [her] testimony, not the admissibility, and may be raised through vigorous cross-examination at trial." *MedARC, LLC v. Scott and White Health Plan*, 618 F. Supp. 3d 365, 373-74 (N.D. Tex. 2022) (denying motion to exclude expert who relied on Fair Health database to determine whether amounts charged in patients' medical bills were usual and customary); *see also Dean*, 2021 WL 9315270, at *7 ("Whether the historical data [in the database] is effective in determining the reasonableness of the fees charged in this particular case is a question of fact for the jury. As the reference materials and the historical data contained therein provided a factual basis for [the expert's] opinions, it is for opposing counsel to inquire into any perceived weaknesses in that factual basis through cross-examination or the presentation of rebuttal evidence."); *Counts v. Pollock*, 2020 WL 5534444, at *3 (M.D. Fla. Aug. 21, 2020) ("[S]uch challenges generally go to the probative weight of the evidence and are subject to attack through cross-examination or the

presentation of contrary evidence at trial, not through a motion challenging the admissibility of the evidence.").

Plaintiff next argues that Rockholt's testimony would be unhelpful, because "her opinion is merely theoretical and has no relationship to Mr. Garvin's reality." Doc. 50 at 13. He contends that her testimony will not assist the jury "since she cannot testify as to whether Mr. Garvin had more 'reasonably' priced healthcare available to him after the subject incident," and therefore "her opinions have no relevance to the jury's determination of damages." *Id.* On the contrary, since Georgia law applies in this diversity case, Plaintiff "is entitled to recover medical expenses arising from his injuries, including hospital charges, that are reasonable and necessary." *Showan v. Pressdee*, 922 F.3d 1211, 1218 (11th Cir. 2019) (internal quotations and citations omitted). The Eleventh Circuit has recognized that whether medical expenses billed were "reasonable or necessary" is a "key issue at trial." *Salkic v. Heartland Express, Inc.*, 813 F. App'x 444, 447 (11th Cir. 2020). Therefore, Rockholt's testimony is relevant and helpful.

Defendant has borne its burden of demonstrating that Rockholt is qualified, that her methodology is not unreliable, and that her testimony

will be helpful, and therefore satisfies *Daubert* and Federal Rule of Evidence 702. However, Plaintiff also challenges Rockholt's testimony under Georgia's collateral source rule and Federal Rule of Evidence 403. Doc. 50 at 13-14. "[T]he 'collateral source rule bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit toward the defendant's liability and damages for such payments.'" *Showan*, 922 F.3d at 1218 (quoting *Hoeflick v. Bradley*, 637 S.E.2d 832, 833 (Ga. App. 2006)). The Eleventh Circuit has rejected this challenge to similar medical billing experts, explaining "Defendants were properly allowed to argue that medical charges were unreasonably high," and such testimony from experts "did not violate the collateral source rule." *Id.* "[T]he testimony of the defendants' expert as to how the charged fees compare to the market is plainly relevant to [the reasonableness] inquiry" and does not "purport[ ] to present evidence that a third party paid for or should pay for the expenses of the tortious injury allegedly caused by the defendants' negligence; accordingly, the collateral source rule does not apply." *Wise v. Bartlett*, 2022 WL 2388631, at *2 (N.D. Ga. Jan. 4, 2022). For the same

reason, Plaintiff's challenge under Rule 403 fails as well.  *Showan*, 922 F.3d at 1218.

For the foregoing reasons, Plaintiff's Motion to Exclude Testimony of TransAm Trucking's Damages Expert Rockholt is **DENIED**.  Doc. 50.

### 4.    Defendant's Expert Bryce Anderson

Defendant identified Bryce Anderson as a biomechanical expert in this case.  *See generally* doc. 60-2 (Anderson's report).  Anderson describes himself as "a forensic scientist that specializes in the application of kinematics and kinetics to motor vehicle crashes and human tissue."  Doc. 60-4 at 4.  During his deposition, Anderson explained that, in this case:

> I analyzed the damage to the front of the International LT to determine the force that would be applied to cause that damage.  That force can then be used to determine a resultant acceleration applied to the International LT.  From that acceleration, I'm able to compute what forces would act on an occupant inside the International LT.

*Id.* at 11.  His "primary opinion is that approximately 561 pounds of force were applied to the front of the International LT tractor to cause the damage that is evident in the photographs."  *Id.* at 20; *see also* doc. 60-2 at 10.  He also opines that, "[i]n the subject event, the contact between the TransAm tractor-trailer and the front of the International tractor did

not generate the dynamic forces necessary to exceed the tissue strength for the occupant lying partially supine on the mattress in the sleeper berth of the International LT tractor." Doc. 60-2 at 10.

Plaintiff moves to exclude Anderson's testimony, arguing his methodology is unreliable because he "solely relies on his experience and scholarship as a forensic scientist rather than conducting any empirical testing or physical examination of either [of] the tractor trailers involved in this case."[7]  Doc. 57 at 5, 5-8.  According to Plaintiff, because Anderson's opinions depend solely on the photographs of the property damage to one of the tractor trailers involved and "reference texts and manufacturer information online," they are based on assumptions.  *Id.* at 7.  Additionally, Plaintiff argues Anderson's opinions exceed the scope of his expertise, since he is not a medical doctor.  *Id.* at 7-8.  Defendant responds that biomechanical experts, including Anderson, are routinely permitted to testify in cases like this one, and that photogrammetry is a generally accepted and reliable method.  Doc. 60 at 8-14.  Defendant also

---

[7] Although Plaintiff purports to argue that Anderson's opinions would not be helpful to the jury, *see* doc. 57 at 5, apart from this conclusory statement, there is no argument as to why the proposed expert testimony would be unhelpful. *See id.* at 5-8.

clarifies that "Anderson does not offer any testimony concerning medical causation in this case." *Id.* at 11.

Although Plaintiff does not challenge Anderson's qualifications as a biomechanical engineer, he does argue that any testimony as to the specific causation, or lack of causation, for his injuries exceeds the scope of Anderson's qualifications. Doc. 72 at 3-4. On that point, Plaintiff, Defendant, Anderson, and the Court, all agree. Anderson may not offer any testimony concerning medical causation in this case. *See* doc. 57 at 8; doc. 60 at 11 ("Anderson does not offer any testimony concerning medical causation in this case."); doc. 60-4 at 10 (Anderson's deposition testimony that he is "not a medical doctor" and is "not rendering an opinion on injury or injury causation."); *see also Heath v. J.S. Helwig & Son, L.L.C.*, 2024 WL 1361873, at *14-15 (M.D. Ga. Mar. 29, 2024).

As the Middle District of Georgia recently explained in *Heath*, "biomechanical engineers may testify whether the forces generated by accidents are likely to generate the <u>types</u> of injuries alleged by the plaintiff, but they may not offer opinions about the precise cause of a specific injury." *Heath*, 2024 WL 1361873, at *14 (internal quotation marks and citation omitted) (emphasis added). This should come as no

surprise to Anderson.  *See Dean*, 2021 WL 9315270, at *5-6 (prohibiting Anderson from offering "any opinion as to the medical causation of Plaintiff's particular injuries or the accuracy of the treating physician's diagnosis.").   Anderson may not offer any testimony opining on the specific cause of Plaintiff's injuries.  *See, e.g.*, *Bowers v. Norfolk Southern Corp.*, 537 F. Supp.2d 1343, 1378 (M.D. Ga. 2007) (prohibiting biomechanical engineer from rendering an opinion regarding specific causation).  Should Anderson attempt to offer any testimony about the cause (or lack thereof) of the specific injury alleged by Plaintiff, it should be excluded.  At this point, however, the record does not show any opinion that Anderson purports to offer that would be violative of this limitation.  *See generally* doc. 60-2.  He is, after all, permitted to "testify about the forces involved here and the kinds of injuries that may have resulted therefrom."  *Berner v. Carnival Corp.*, 632 F. Supp. 2d 1208, 1213 (S.D. Fla. 2009); *see also Dean*, 2021 WL 9315270, at *6 (permitting biomechanical expert to offer "opinions on such matters as the forces that were generated in the collision, the amount of force that was exerted on Plaintiff's body, and the general types of injuries those forces are capable of causing." (emphasis omitted)).

Plaintiff also challenges Anderson's methodology because he relied on photographs instead of an independent inspection of the involved tractor-trailers. *See* doc. 57 at 6-7; *see also id.* at 2-3. However, as the Northern District of Georgia explained when confronted with a challenge to Anderson in *Dean*, which also involved a tractor trailer collision, "[p]hotogrammetry has long been recognized as a reliable method of accident . . . investigation that uses information gleaned from photographs to make various calculations and, in turn, form opinions regarding the circumstances surrounding the subject matter that the photographs depict." *Dean*, 2021 WL 9315270, at *4 (citing, *inter alia*, *United States v. Kyler*, 429 F. App'x 828, 830 (11th Cir. 2011)). Critiques about the factual bases for Anderson's opinions are better suited for cross-examination. *See, e.g.*, *Rogers v. United States*, 2015 WL 13776170, at * 5 (S.D. Fla. Dec. 28, 2015) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (internal citation and quotations omitted)). As in *Dean*, Plaintiff's challenges to Anderson's reliance on allegedly faulty data is to be explored on cross-examination, but it is not relevant in determining

the admissibility of his opinions.  2021 WL 9315270, at *4.  Plaintiff's

Motion to Exclude Testimony of TransAm Trucking's Biomechanics

Expert Dr. Bryce Anderson is, therefore, **DENIED**.  Doc. 57.

## Conclusion

Defendant's Motion to Exclude Steven Poletti and Glen Adams is

**DENIED**.  Doc. 54.  Defendant's Motion to Exclude Testimony of

Plaintiff's Expert Witness David A. Stopper is **DENIED**.  Doc. 52.

Defendant's Motion to Exclude or, in the alternative, Limit the

Testimony of Oliver G. Wood, Jr., is **DENIED**.  Doc. 53. Plaintiff's Motion

to Exclude Testimony of TransAm Trucking's Damages Expert Rockholt

is **DENIED**.  Doc. 50.  Plaintiff's Motion to Exclude Testimony of

TransAm Trucking's Biomechanics Expert Dr. Bryce Anderson is

**DENIED**.  Doc. 57.

**SO ORDERED**, this 6th day of May, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA